Good morning, your honors. May I please the court, my name is Louis Teran. The only issue in this case is whether the district court abused its discretion in holding that this case is not exceptional under section 285. Our contention is that the district court based its decision on two factual findings which are erroneous and not supported by the record. The first factual finding relates to the reasons that this case was filed to begin with. The second issue relates to the manner by which this case was subsequently voluntarily dismissed. I will discuss those two matters here before you. On the first issue, the court's order indicates or implies that the case was filed because the appellants refused to produce verified sales records for the accused products. And that, in fact, is erroneous. It is not supported by the record. In fact, the record indicates that at the time that this case was filed, the parties had been reviewing a settlement agreement that had been proposed and drafted by the appellee which did not require the appellants to produce verified sales records. Through months of negotiation prior to that settlement agreement, the parties had reached a compromise in which the appellants would simply fill in the sales information into the agreement and that would then settle the matter. And in fact, in late July, the appellants communicated to the appellee that they were agreeable to the agreement, would review it within the first week of August and likely sign it, fill in the information and sign the agreement. Before the appellants were able to do that, this case was filed by the appellee after being communicated that we would likely end up signing the settlement agreement to begin with. The day after the complaint was filed, we received an amended settlement agreement which did not, again, did not require the appellants to produce any verified sales records. The only amendment in that new settlement agreement was the additional money that we had to pay to compensate them. This is Judge Reina. Let me ask you a question. I think the standard of review that you're facing is abuse of discretion. Can you tell me what of the district court abuses discretion? Yes, Your Honor. So the abuse of discretion was based, the order that was signed was based on two factual findings that were erroneous and not supported by the record. And I think because that was, because that error was so grave, I think there was an abuse of discretion. I think the abuse of discretion standard was identified in a prior case. Let me pull that up. The standard is either an erroneous view of the law or an erroneous assessment of the evidence. Right, the erroneous assessment of the evidence, of the facts in the case. And that is basically our contention. Our contention is that the district court erroneously assessed the facts in this case and specifically in the order, the district court identified two main reasons why it believed that this case was not exceptional. One, it indicated because the appellants did not refuse to produce verified sales records. The other one that it indicated was that as soon as the records were produced, appellee learned that the damages were low and therefore it took the proper action of voluntarily dismissing the case. And so the court said, there's nothing exceptional about that. That is actually a proper thing to do. But that in fact did not happen. One, the verified records were produced by appellants back in January of 2020 pursuant to a court order. So back in January 2020, it was revealed by those records that the damages in this case were substantially low. But the case was not dismissed until September of 2020. Nine months later, after we had gone through the whole markman process, after we had spent a substantial amount of time, resources and money going through that process. So the notion that this case was voluntarily dismissed when the appellee discovered the damages were low is not supported by the record. Our contention is that this case was dismissed later on on that basis. It was dismissed because damages were low. And so the question is, what took so long? Why did the appellee take so long to dismiss the case? Our contention is because they're trying to force the appellants into an unreasonable settlement, into an unreasonable- Were you ever asked by the other side to consent or to join a motion to dismiss the case at an earlier stage? I apologize, your honor. I did not hear- Were you ever asked by the other side to join in a motion to dismiss a case at an earlier date? Yes, your honor. In fact, when the records were produced in January, the other side indicated to us that they would file a motion to dismiss back in March. And that is when we were asked to join in that motion. We did not join in that motion because that motion was never filed back in March. Did you agree to join the motion? I'm sorry? Did you agree to join the motion? We did not agree to join the motion because the motion that was being asked was a voluntary dismissal of the case without prejudice. And the appellants did not want to have the case dismissed without prejudice. The appellants really, truly believed that they were not infringing. They did not infringe. And they had a reasonable belief that the patent was not, the scope of the patent was not valid. I apologize, your honor. I interrupted. So when the proposal first came to us in March, we did not agree to it, but that motion was not filed in March. We were forced to proceed with the mark-and-bring process. We were forced to proceed with mark-and-bring discovery and then the mark-and-hearing and everything like that. Our contention is that had this case been dismissed back in March, which is reasonably close in proximity to the date in which it was revealed that the damages were low, that would have been appropriate and that would have been consistent with the district court's holding that it was proper. But that is not what happened. The court did not see or failed to see that the case was actually, that the dismissal of the case was delayed for almost nine months until September of 2020. And that time period was prejudicial to appellants because we had to go through the whole process. Mr. Turan, this is Judge Chen. At one point, did you inform the court that you had stopped selling your product or that you were agreeing to no longer sell your product? We had, yes, we had done that, Your Honor. I believe it was done in the first status conference with the court. And that was something that had been agreed on by the parties already. So when did you tell the court this? Yes, we did inform the court. When? In the first status conference. When was that? When was that? Apologize. When was that? What's the date? That was in 2019, before the, I think it was on the same day that the court ordered us to produce verified sales records. So I think it would have been probably around November 2019, if I'm not mistaken, because our production was due in early January 2020. So we did inform the court of that late 2019. And then when we did produce the verified sales records in January 2020, it became obvious that, say, the damages were low. And the basis for the voluntary dismissal later on, September 2020, the basis was the records that we had produced in January 2020, indicating that the damages were substantially low. So, Your Honor, the essence of the case is that we were forced to go through the marketing process, unnecessarily. We believe that if there was an intent to litigate the case on the merits, it should have proceeded. The appellants were certainly ready to do so. And based on the information we had, the appellee intended to do so, because they indicated to us back in March that they were going to dismiss the case. They actually provided us a copy of the motion to voluntarily dismiss back in March. And they never did. We were forced to go through the marketing process. That was an indication to us, okay, well, we're going through this case. We're going to proceed. We have to defend ourselves vigorously. We're going to go through the marketing process, which we did. And then later on in September, to our surprise, the case was dismissed. We believe that is, you know, the course finding that the case was dismissed soon after it was learned the damages were low is erroneous. It's just not supported. There was a nine-month delay that was highly prejudicial to us. Okay, thank you. Let's hear from the other side. And you have time for rebuttal. Thank you, Your Honor. I'm just rearranging the camera and standing up. I hope the court can see me. May I please the court? I represent Tiger Manufacturing, the appellee in this case. And I've heard over and over again, just now and throughout the litigation below, how Tiger forced MWI to proceed with the Markman area and all the other large expenses that they had to incur, which we also had to incur. This is simply, absolutely, wholly untrue. Prior to the Markman hearing, when I prepared the, when we were contemplating filing the motion to dismiss without prejudice, we were concerned about race judicata. Because although the majority of the cases that the federal circuit hold that the cause of action creates a new cause of action that's not race judicata, there are a lot of cases that go the other way. But more to the point, at that meet and confer, I offered not only to dismiss the case without prejudice, but also to give a release as to the prior sold products and no exchange of money, nothing else. It is completely untrue that we dragged them through the Markman process. Quite to the contrary, MWI held us hostage in this litigation and we had no way of getting out. I don't wanna repeat all the facts found by the judge below, Judge Atlas, who is a experienced judge in patent litigation. Her brief is concise, in detail, and fully explains the numerous factual findings that the defendants have not even addressed. And her ultimate finding that the case was not exceptional on the part of Tiger. Tiger submits that none of the factual findings are clearly erroneous, and that the ultimate finding of fact of the case not being exceptional is similarly not clearly erroneous. And lastly, Tiger has requested, or not by a separate motion, but asking the court to respond to it, to find this case to be frivolous. Tiger believes that there is no plausibility in any of the arguments raised by MWI, and this appeal has caused significant harm to Tiger. I'll close with that. Okay, thank you. Thank you. Okay, Mr. Tarrant, do you have your rebuttal? Yes, Your Honor. I would like to actually address a question that was raised earlier by Your Honor. By Your Honor. The question was, had we joined, had we been asked to join a motion in this case? I indicated that we had been asked, and we did not agree to join that motion. This was back in March of 2020. And I want to elaborate on that a little bit in that the request was to join a motion to dismiss without prejudice. And under, I believe it's section 41, whenever there is a dismissal without prejudice, the other side has the option to ask for attorney's fees and various other forms of relief when it is done without prejudice, only to prevent any future litigation and things like that. There's a case where I think it was briefed, and it was something that we argued in front of the district court. The district court obviously denied our request for attorney's fees later on when it was filed in September. In September, when the motion for voluntary to dismiss was filed, we asked for that relief under section 41, and then the district court denied that relief. And then later on when the case was dismissed, we then asked for attorney's fees pursuant to section 285, and that was denied. But your honors, the other thing I would like to address, the idea that we held the appellees hostage in this case, it simply is not true. We did everything we could to avoid this case. When this case was filed, we had a settlement agreement that appeared to be agreeable to all parties. It was something that was proposed by the appellee. They drafted it, we were reviewing it. I indicated to the appellee's counsel that I would provide them with an answer in the first week of August, but then they went ahead and filed this case in August one. So the idea that we held them hostage is just simply not true. In March 2020, did you offer to settle this case by having the patent owner pay your side $75,000 and then provide you a license, an unrestricted license? Right, your honors. So that was your idea of how to settle this case. Well, your honor, it's over. So by that time, by March 2020, we had undergone months of negotiating a settlement agreement. They filed the case anyways, as I indicated. And then when they filed the case, they wanted more money. And then soon after the case was filed, we offered to settle the case for a reasonable amount, a very reasonable amount, I think it was $5,000, which is more than what actual damages was. They turned this down. Now, you don't have to tell me the whole story. I'm just trying to understand why a plaintiff, a patent owner, would take a settlement offer where you get a royalty-free license and you get from them $75,000. Yeah, I mean, yes, your honor. I mean, at that time, they had proposed, they had made the proposal to indicate it to us that we're gonna file the motion to dismiss without prejudice. And our position was, well, you know what? We're gonna be entitled to attorney's fees. I mean, that was our belief. We're gonna be, you know, we should be entitled to attorney's fees if you're going to dismiss without prejudice. And so, yes, at that point, I said, look, okay, let's settle it for this amount. So yes, that did occur. So, yes, we appreciate that was an opening conversation. What was the state of the agreement at the time that they filed that suit? The agreement that you were waiting to sign? When they filed the suit? The state of the agreement? I apologize, your honor. No, I was asking the state, the monetary, or the relationship, whatever it was, when you had an agreement that you thought was final. Right, so the state, the agreement basically called for the appellants to seize a sale of the accused goods, which we had no problem with that. It identified a percentage of gross sales that would be the damages. That percentage was a number that we, you know, we didn't have a problem with. The only thing that was pending was for the appellants to fill in the number, the actual sales figures from their records, and then that, in turn, would calculate the settlement amount, which was, I think, 8% of gross sales. So we had to fill in gross sales for all the items that they had identified in the settlement agreement. So we had to go over the records, pull those numbers out, fill it in, calculate the total settlement amount, and then sign the agreement. That was essentially what we needed to do. And we had, I had communicated to appellant's counsel that we would do that by, if I remember correctly, it was August 7th or August 8th. And I think I made that representation late July. I think it was July 29th. And then this case was filed on August 1st, without giving me any kind of notice or retracting that settlement proposal. It was simply filed on August 1st. And then the day after, I received an amended settlement offer or settlement agreement, where the only amendment was more money for us to pay to cover attorney's fees for a complaint that really should not have been filed to begin with, because we're in the middle of negotiating the settlement. So, okay, any more questions? Any more questions? Okay, thank you. Our thanks to both counsel. The system seems to have worked. Thanks to our staff. The case is taken under submission. That concludes this panel's argued cases for this morning.